Argued and submitted October 11, award of child custody affirmed; award of child support vacated January 8, 1992

In the Matter of the Marriage of

Jerry Claude KOCH,
*Respondent,*
*and*

Cherryl Ann KOCH,
*Appellant.*

(DO90-0035; CA A68307)

823 P2d 442

Mary Biel, McMinnville, argued the cause and submitted the brief for respondent.

George J. Zarzana, McMinnville, argued the cause for appellant. With him on the brief was Johnstone, Zagar & Zarzana, McMinnville.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Mother appeals an order of the trial court awarding custody of the parties' child to father and requiring mother to pay $50 per month in child support. She argues that she is not able to pay any child support, because her only source of income is $684 per month in Aid to Dependent Children (ADC) and $264 in food stamps and she has three other children from previous relationships to support. We affirm the award of custody, but vacate the child support award. We write only to address the application of the Uniform Child Support Guidelines to the support award. ORS 25.270 to ORS 25.285.

Although mother's argument makes no reference to them, this case is controlled by the guidelines as they existed on November 8, 1990, the date when the child support order was entered.[1] At that time, OAR 137-50-470 provided that $50 is the presumed minimum amount that a noncustodial parent has the ability to pay. That presumption may be rebutted on a showing that the amount is unjust or inappropriate under the circumstances.[2] Each parent's percentage share of child support is determined by dividing both parents' combined gross income into each parent's individual gross income. ORS 25.275(2)(b). Under the administrative

---

[1] The legislature recently enacted Oregon Laws 1991, chapter 520, section 3, effective July 14, 1991, which creates new child support presumption and modification rights for recipients of specified public assistance programs, including ADC payments. The law now provides, in part:

"(1) *Notwithstanding any other provision of Oregon law, a parent who is eligible for and receiving cash payments* made by the Department of Human Resources under Title IV-A of the Social Security Act or under the General Assistance or Oregon Supplemental Security Income Programs or cash payments made by the Social Security Administration under the Supplemental Security Income Program *shall be rebuttably presumed unable to pay child support.*" (Emphasis supplied.)

In addition, subsection (3) provides that an obligated parent's receipt of public assistance from any of the eligible programs is sufficient cause to reduce the amount of an existing child support order to zero. Finally, subsection (6) provides that the presumption applies whether or not the support order is enforced by the Support Enforcement Division. *See Gay and Gay*, 108 Or App 121, 124, 814 P2d 543 (1991).

[2] In sum, Oregon Laws 1991, chapter 520, section 3, changed the presumptions regarding a welfare parent's ability to pay child support. Under the guidelines in effect at the time that the order in this case was entered, a parent receiving public assistance payments was presumed to be able to pay $50 per month in child support. For orders entered after July 14, 1991, however, a parent in that situation is presumed to be unable to pay *any* child support.

rules that implement the guidelines, "gross income," for purposes of calculating a child support obligation, is "income from any source," specifically including ADC payments and food stamps. OAR 137-50-340(1).

It is clear that, in general, public assistance payments are to be included in gross income. However, it is not as clear how gross income is calculated when, as in this case, it is the *noncustodial* parent who is the welfare recipient. OAR 137-50-340(3) provides that, if the *custodial* parent receives ADC, that parent's gross income is the greater of the amount of assistance for which the household is eligible or the amount that the parent could earn by full-time work at the minimum wage.

The rules do not give similar guidance for determining gross income when the noncustodial parent receives ADC. However, OAR 137-50-360(1)[3] provides that, if a parent is unemployed or is employed part-time, or there is no evidence of income, child support is determined on the basis of "potential income." That is, there is a rebuttable presumption that every parent can be employed full-time at at least the minimum wage.[4]

The current full-time minimum wage is $823 per month. *See Oregon Child Support Guidelines Commentary*, support computation worksheets. The next step is to determine the parents' *adjusted* gross income (AGI) by deducting preexisting support obligations or adding preexisting spousal support awards. OAR 137-50-320. Here, mother's AGI is:

| | |
|---|---|
| $823 | (presumptive full-time minimum wage) |
| − 82 | (less deductions for her three other children allowed by OAR 137-50-400)[5] |
| $741 | AGI |

---

[3] OAR 137-50-360(1) provides:

"If a parent is unemployed, employed on less than a full-time basis or there is no direct evidence of any income, child support shall be calculated based on a determination of potential income. For purposes of this determination, there shall be a *rebuttable presumption that a parent can be gainfully employed on a full-time basis*." (Emphasis supplied.)

[4] There is no argument that mother has the potential to earn more than the minimum wage. *See* OAR 137-50-360(2)(a).

[5] Since the entry of the order in this case, OAR 137-50-400 has been revised to provide for a slightly different formula for computing the nonjoint child credit. The revisions were effective January 1, 1991 and, therefore, do not apply to this order.

Finally, the AGI is compared to the Scale of Basic Child Support Obligations (scale) to arrive at the presumptively correct amount of mother's support obligation. OAR 137-50-490. For an AGI of $741 per month, the scale would impose an obligation for one child of $70 per month. However, the trial court determined that the presumption that that amount was correct had been overcome:

> "I am satisfied that the statute would provide for $73,[6] I think, although she testified her public assistance * * * would be less. * * * [B]ut I will also find based upon the administrative rules there are other factors that the Court is to consider, namely, other — *her income, and the special hardships that she has in raising three children on public assistance she receives without support from two other fathers.* And based upon that, I am satisfied that the presumption of $73 has been overcome, and that $50, that being the minimum amount is the appropriate amount of child support." (Emphasis supplied.)

Once the minimum support obligation was ordered, OAR 137-50-470 created a rebuttable presumption that the noncustodial parent is able to pay that amount. Accordingly, the minimum support order of $50 per month was appropriate, unless mother presented sufficient evidence that she is unable to pay that amount.

■■ Although the first priority is to provide adequate support for the children, the amount of support required of the obligated parent must not exceed the ability to pay and must not preclude the ability to support oneself. *See Martin and Ives,* 85 Or App 392, 736 P2d 613 (1987); *Hockema v. Hockema,* 18 Or App 273, 276, 524 P2d 1238 (1974). A parent who is already living at a subsistence level cannot be placed in a position of being forced to use public assistance funds intended for the support of one child for the benefit of another.

■ Although the trial court noted mother's desperate financial situation, it nevertheless concluded that she could pay $50 per month as child support:

---

6 Although the trial court determined a presumptive child support obligation of $73 per month, the record and the scale reveal that the amount is $70 per month.

"I think you have more than enough to take care of with the three other children you presently care for, and have custody of.

"\* \* \* \* \*

"I think, Mrs. Koch, you have done to some extent the best you can given your background, given your limited ability to function. But I think the thing that troubles me, it seems like you need another male in the household at some time or other just to maintain the household. I don't think it is appropriate for the child, or, frankly, any child to continue to see a number of different males in your life just for the sake of helping you maintain the household."

Although we give deference to the trial court's findings of fact, because of its unique ability to determine the parties' credibility, we view the evidence in this case in a somewhat different light. Father is working full time, is not receiving assistance payments and is able to support the child. The record also reveals that father's sister lives with him and that the household benefits from her additional income.

In contrast, mother does not receive child support from the fathers of her three other children. Accordingly, she is solely responsible for their support and is doing that at a subsistence level. There is no evidence in the record that mother has any additional sources of income or that her household derives any significant financial benefit from other adults. Her Uniform Support Affidavit reveals that the family's debts and the children's expenses already exceed the amount of the assistance payments. Those payments will be reduced when custody is changed to father and, therefore, it is inappropriate for the payments to the nonjoint children to be used to support the joint child. There are no funds from which she may draw to support the child in father's custody. Thus, on *de novo* review, we conclude that, because the presumption that mother is able to pay the minimum child support obligation of $50 per month has been overcome, the trial court erred in ordering her to pay any amount.

Award of child custody affirmed; award of child support vacated.