Submitted November 18, 2014, affirmed March 9, 2016

In the Matter of the Marriage of

Aaron Christopher DeSHAW,
*Co-Petitioner-Respondent,*
*and*

Syeda F. NAHAR-DeSHAW,
aka Syeda F. Elaine Nahar-DeShaw,
nka Syeda F. Nahar-Rahman,
*Co-Petitioner-Appellant.*

Multnomah County Circuit Court
071070797; A153633

369 P3d 1194

Brenna A. Tanzosh filed the briefs for appellant. With her on the briefs was Tanzosh Family Law LLC.

Mark Johnson Roberts filed the brief for respondent. With him on the brief was Gevurtz, Menashe, Larson & Howe, P.C.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.

HADLOCK, C. J.

## HADLOCK, C. J.

Wife appeals a supplemental judgment that modified the child-support, parenting time, and custody provisions of the judgment that dissolved her marriage to husband; she also appeals a second supplemental judgment that awarded husband attorney fees. Wife raises eight assignments of error, seven of which—when reduced to their core—assert that the amount of child support that the trial court ordered her to pay is too high because the trial court erred when it calculated husband's income.[1] In response, husband argues that wife's assignments of error are not preserved. On the merits, husband contends that the trial court followed the Child Support Guidelines when it calculated the support award and that the court's factual findings are supported by evidence in the record. We conclude that none of wife's assignments of error provides a basis for reversing the trial court's calculation of husband's income or its calculation of the amount of wife's child-support obligation. Accordingly, we affirm the supplemental judgment.

At the outset, we decline wife's request to review the trial court's decision *de novo* under ORS 19.415(3)(b). *See* ORAP 5.40(8)(c) (stating that we exercise *de novo* review "only in exceptional cases"). Accordingly, we are bound by the trial court's express and implicit findings of historical fact as long as they are supported by any evidence in the record. *Andersen and Andersen,* 258 Or App 568, 570, 310 P3d 1171 (2013). Child support calculations are governed by the Oregon Child Support Guidelines promulgated by the Oregon Department of Justice's Division of Child Support. ORS 25.275; *see* OAR 137-050-0700 - 137-050-0765 (the guidelines). We review the trial court's interpretation of the guidelines, and its compliance with them, for legal error. *Adams and Adams,* 274 Or App 423, 426, 360 P3d 742 (2015); *McMurchie and McMurchie,* 256 Or App 712, 721, 304 P3d 751 (2013).

To provide context for the parties' arguments on appeal, we begin by reviewing pertinent aspects of the

---

[1] In her eighth assignment of error, wife seeks reversal of the April 2013 supplemental judgment that awarded $3,750 in attorney fees to husband. We reject wife's challenge to the fee award without discussion.

guidelines and the statutory provisions that govern how a parent's child support obligation is calculated. ORS 25.275(1) directs the Division of Child Support to establish a formula for determining child support awards, taking into consideration "[a]ll earnings, income and resources of each parent," ORS 25.275(1)(a), "[t]he earnings history and potential of each parent[,]" ORS 25.275(1)(b), and other factors. In response to that statutory mandate, the Support Enforcement Division promulgated the guidelines—articulated in administrative rules—which set out a multistep formula for determining child support awards.

The guidelines have been amended frequently over the years. Here, we apply the same version of the guidelines that the trial court did, as reflected in the administrative rules that were in effect both in June 2012, when the trial court issued its decision, and when the supplemental judgment was entered in January 2013.[2] *Koch and Koch*, 110 Or App 497, 499-500, 823 P2d 442 (1992) (applying the guidelines in effect at the time the support order was entered).[3]

To calculate a child support amount under that version of the guidelines, a trial court first determined each parent's income as provided in OAR 137-050-0715. OAR 137-050-0710(4). "Income" was then defined as "the actual or potential gross income of a parent, as determined in this rule." OAR 137-050-0715(1). "Actual income" meant "all earnings and income from any source" (with exceptions not pertinent here), including employment-related income like a salary or wages. OAR 137-050-0715(2)(a). "Actual income" also included income obtained through self-employment or ownership of a business, less "ordinary and necessary expenses":

"Income from self-employment, rent, royalties, proprietorship of a business, or joint ownership of a partnership

---

[2] The following versions of the guidelines rules were in effect when the trial court rendered its decision: OAR 137-050-0700 (Jan 4, 2011); OAR 137-050-0710 (July 1, 2010); OAR 137-050-0715 (July 1, 2010); OAR 137-050-0720 (Jan 4, 2011); OAR 137-050-0725 (Jan 4, 2011); OAR 137-050-0730 (July 1, 2010); OAR 137-050-0735 (Jan 4, 2011); OAR 137-050-0740 (Jan 4, 2011); OAR 137-050-0745 (July 1, 2011); OAR 137-050-0750 (Jan 3, 2012); OAR 137-050-0755 (Jan 4, 2010); OAR 137-050-0760 (July 1, 2010); OAR 137-050-0765 (Jan 4, 2010). All references to the guidelines in this opinion are to the aforementioned rules.

[3] The guidelines have been amended significantly since then.

or closely held corporation, minus costs of goods sold, minus ordinary and necessary expenses required for self-employment or business operation. Specifically excluded from ordinary and necessary expenses are amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses * * * or any other business expenses determined by the fact finder to be inappropriate or excessive for determining gross income[.]"

OAR 137-050-0715(2)(e).

The second step in the calculation of child support under that version of the guidelines involved determining each parent's adjusted income and, based on that, "the basic support obligation." OAR 137-050-0710(5) - (7). After making any necessary further adjustments, *see* OAR 137-050-0710(8) - (14), the trial court could, if it determined that the calculated support amount was "unjust or inappropriate," apply "any appropriate rebuttal" pursuant to ORS 25.280 and OAR 137-050-0760. OAR 137-050-0710(15). In accordance with ORS 25.280, the guidelines identified several "rebuttal factors" relevant to the unjustness or inappropriateness of a parent's presumed support obligation, including "[e]vidence of the other available resources of the parent[.]" OAR 137-050-0760(1)(a). A trial court could, in its discretion, apply the rebuttal factors "by adjusting the income of a parent, the costs for the child or the presumed support amount." OAR 137-050-0760(1).

With that regulatory framework in mind, we turn to the facts relevant to the issues that wife raises on appeal. We give only an overview of those facts here; we provide more detail about the pertinent facts in association with our discussion of each of wife's assignments of error. The parties were married in 1999 and have two minor children. They entered into a stipulated general judgment of dissolution of marriage in 2008. According to the dissolution judgment, husband was awarded legal custody of the two children, subject to wife's parenting time. At that time, the trial court determined that husband's income was $10,000 per month and wife's income was $4,333 per month. As a result of guidelines calculations, the trial court ordered wife to pay child support. However, the parties stipulated to waiving wife's child support obligation.

In May 2011, wife filed a written request for modification of the dissolution judgment's provisions regarding parenting time and child support. In response, husband agreed that parenting time and child support should be modified. The parties both acknowledged that a "substantial change in circumstances" had occurred, allowing modification of the support award. *See* ORS 107.135 (regarding modification of support obligations); *Pierce and Pierce*, 206 Or App 699, 706, 138 P3d 889 (2006) (court may modify child-support obligation "when there has been a substantial change in economic circumstances that was not anticipated at the time of the original judgment").

Before the trial court, the parties agreed that wife's income had increased from $4,333 per month to $5,000 per month since the 2008 judgment was entered. The parties also agreed that husband's income had changed since entry of that judgment. However, they made very different assertions about the form that change had taken. Husband claimed that his income had decreased since 2008. Wife asserted, to the contrary, that husband's income had increased substantially. Indeed, the parties' major dispute—then and on appeal—revolves around husband's income, which he received mostly from self-employment and through his ownership of various businesses. According to husband's tax returns, his income fluctuated greatly from 2009 through 2011.

Based upon the evidence received at trial, which we discuss in somewhat more detail below, the trial court concluded that husband's monthly income was $5,833 and wife's monthly income was $5,000. The trial court's determination of husband's income appears to have been based largely on husband's testimony about what he had earned during the first four months of 2012 (a total of $12,000) and what he expected his income to be for the rest of the year, based in part on his expected business income—a determination that, itself, was based partly on huband's business income during the preceding years. Consequently, after performing the calculations required by the guidelines, the trial court ordered wife to pay child support of $481 per month for the couple's two children. The court concluded that "each party's presumptive child support obligation for the minor children

[was] in compliance with the child support guidelines," and it noted that "[n]o rebuttal was awarded by the court."

On appeal, wife raises seven assignments of error related to the child-support calculation.[4] We reject wife's first, fifth, and seventh assignments of error without discussion. The remaining assignments of error—discussed below—all relate to ways in which wife argues the trial court failed to correctly calculate husband's income under the guidelines. In response, husband asserts that each assignment of error is unpreserved and that, in any event, each fails on the merits.

We begin with wife's fourth assignment of error, in which she challenges the trial court's calculation of husband's 2011 income. Specifically, wife argues that the trial court erred as a matter of law by allowing husband to include accelerated depreciation of certain assets as an ordinary and necessary business expense, contrary to OAR 137-050-0715(2)(e), when it calculated husband's income. Husband responds that the claim of error is unpreserved, asserting that "[wife] can point to no place in the record where her claimed error was presented to the trial judge and ruled upon incorrectly." We agree that wife's fourth claim of error is unpreserved and, therefore, does not provide a basis for reversing the trial court's judgment.

A concise overview of the principles that govern the calculation of business income, for child support purposes,

---

[4] Specifically, in her assignments of error, wife contends that: (1) the trial court based its child support award on husband's potential income rather than his actual income; (2) the trial court focused on husband's taxable income rather than his gross income; (3) the trial court failed to require husband to provide documentation to substantiate the ordinary and necessary business expenses claimed on his 2011 tax return; (4) the trial court erroneously included accelerated depreciation as a business expense when determining husband's actual income; (5) the trial court excluded in-kind payments received by husband through his business that reduced his personal living expenses; (6) the trial court erred by not averaging husband's actual income for the last three years based on his fluctuating earnings from 2009 through 2011; and (7) the trial court should have determined that the presumed support obligation was unjust or inappropriate and, therefore, should have—as a rebuttal factor—adjusted husband's income by taking into account distributions that husband took from his businesses and a bank account. The seventh assignment of error does not identify any legal error purportedly committed by the trial court; rather, it is premised entirely on wife's request that we review the income calculation *de novo*.

is helpful to understanding why wife's argument is unpreserved. When a trial court calculates a parent's "[a]ctual income," ordinary and necessary expenses may be deducted from any business income. OAR 137-050-0715(2)(e) ("Actual income" includes "[i]ncome from self-employment, rent royalties, proprietorship of a business, or joint ownership of a partnership or closely held corporation, minus costs of goods sold, minus ordinary and necessary expenses required for self-employment or business operation."). Some types of depreciation are allowable "ordinary and necessary expenses" for those purposes. *See Carleton and Carleton*, 275 Or App 860, 866-67, 366 P3d 365 (2015) (implicitly acknowledging as much). However, the guidelines expressly exclude *accelerated* depreciation from the expenses that may be deducted in calculating income. OAR 137-050-0715(2)(e) ("[s]pecifically excluded for ordinary and necessary expenses are amounts allowable by the Internal Revenue Service for the accelerated component of depreciation expenses * * *"). As wife correctly observes, the person claiming a deduction from income for "ordinary and necessary expenses" generally has the burden of proof and must provide documentation to support his or her entitlement to an offset. ORS 25.290(1) ("The obligor has the burden of proof and must furnish documentation to support any offsets claimed."); *Pierce*, 206 Or App at 706 (applying that burden in the context of an ORS 107.135 child-support modification proceeding).

As noted, wife argues on appeal that the trial court erred by "excluding the accelerated component of depreciation when determining [husband's] actual income from self-employment for child support purposes," that is, by considering accelerated depreciation an "ordinary and necessary expense" to be deducted from husband's business income when calculating his actual income, in violation of OAR 137-050-0715(2)(e). Wife asserts that she preserved that argument by citing that administrative rule in her hearing memorandum and by arguing "that depreciation was specially excluded by the law and needed to be added back in as income." We disagree.

At the hearing before the trial court, both parties provided evidence of husband's income, including copies of husband's individual tax returns, the tax returns for his

businesses, and testimony from husband's accountant. The evidence demonstrated that "pass through" income and losses appeared on husband's individual tax returns because of his self-employment and ownership of various businesses. Husband's total income for the years 2009, 2010, and 2011, as it appeared on his individual tax returns, was, respectively, $2,775,789, $362,809, and -$156,367.[5] His taxable income for those three years, as reported on his individual tax returns, was $2,712,203, $189,142, and $0.

Although the parties agreed that husband's income fluctuated partly because of deductions taken into account in calculating his business income, they disputed whether those deductions were permissible under the guidelines. Wife argued, among other things, that the depreciation husband claimed for his various businesses was not "really an out-of-pocket expense" and, in accordance with the guidelines, "it specifically is excluded." In response, husband testified that one of his businesses "bought video equipment and personal property which, in fact, depreciates. * * * So if there's depreciation, it's real. * * * This was a legitimate, real cost to that business." Husband's accountant testified that husband handled depreciation differently in different tax years; he explained, "depreciation is calculated based on tax laws and schedules and rules. The—whether or not there's an actual expense for it or not would be based upon what the item is that's really being depreciated."

Thus, husband presented evidence to support his assertion that he could properly deduct depreciation of assets when calculating his actual income. Wife argued, to the contrary, that depreciation was not a proper expense to deduct. However, wife never distinguished *accelerated* depreciation— which is not an "ordinary and necessary expense," for purposes of the guidelines, from other types of depreciation, which may be. Nor did wife specifically point to evidence purportedly demonstrating that husband had deducted accelerated depreciation. True, wife did cite to OAR 137-050-0715(2)(e), which provides that accelerated depreciation is not an

---

[5] Husband contends that his 2009 income was substantial because he received payment for a large judgment on a class action case. Husband argues, and wife concedes, that the 2009 tax return is not representative of his current income because of the onetime nature of the judgment received.

"ordinary and necessary expense." But that is the same rule that generally explains how actual income is calculated when a parent has income from self-employment or ownership of a business. Mere citation to that rule did not, therefore, "provide the trial court with an explanation of [wife's] objection that [was] specific enough to ensure that the court [could] identify its alleged error with enough clarity to permit it to consider and correct the error immediately." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Cf. *Carleton*, 275 Or App at 866-67 (where neither party to a dissolution proceeding established what portion of depreciation that one party claimed as a business expense was accelerated depreciation, the court did not err when it did not include accelerated depreciation in that party's income when calculating the party's child-support obligation). In short, wife's fourth claim of error is not sufficiently preserved for appeal.

The argument that wife makes in conjunction with her second assignment of error also is not preserved for our review. Wife contends that the trial court erred when it focused on husband's taxable income of $189,142, as stated in his 2010 individual tax return—and not his gross income of $362,809—when determining his income under the guidelines.[6] Wife's complaint appears to be that the trial court should have performed its own calculations to determine husband's "actual income" under OAR 137-050-0715, by subtracting "ordinary and necessary expenses" from husband's business and self-employment income, rather than relying on the taxable-income calculation reflected in husband's tax return. Wife did not make any such argument in the trial court. Although she generally pointed out times when husband's accountant was relying on taxable-income figures, and not amounts of gross income, she did not explain why she viewed that as impermissible. Nor did wife ever assert that the trial court was required to perform its own calculations instead of relying on those that

---

[6] Wife appears to use the term "gross income" to refer to the sum of husband's income from all sources (including business income and losses)—that is, to something either identical to or akin to husband's "total income" as that latter term is used on husband's individual tax return. However, she also has sometimes used the term "gross income" to refer to husband's "adjusted gross income," which was reported as $2,761,581, $350,814, and -$156,367 for the years 2009, 2010, and 2011.

formed the basis for husband's tax returns. Finally, wife never argued (and, indeed, has not argued on appeal) that the trial court would reach a different "actual income" figure if it performed its own calculations rather than relying on the "taxable income" amount reflected on husband's individual tax return. We conclude that wife's second assignment of error is not preserved for appeal.

We turn to wife's third assignment of error, in which she contends that the trial court erred when it did not require husband to "produce documentation under ORS 25.290 to substantiate the ordinary and necessary business expenses on the 2011 tax returns." More specifically, wife argues, as she did below, that "[t]he documentation that has been provided for 2011 is incomplete and unreliable, especially the 2011 tax returns [because Husband] * * * filed his 2011 personal tax returns *on time,* which has not been his practice in the past." (Emphasis in original.) It is not clear whether wife's argument depends on her request that we review the income determinations *de novo*—something that we have declined to do. In the absence of *de novo* review, wife's argument might be understood as a contention that a trial court is precluded, as a matter of law, from relying on information included in a parent's promptly filed income-tax return when determining that parent's income under the guidelines. We reject any such contention. *Cf. State v. Nguyen,* 268 Or App 789, 794, 344 P3d 49 (2015) ("The trial court did not err in finding that father's income tax return correctly stated his farm income[.]").

We also reject wife's argument to the extent it can be understood to contend that no evidence in the record supports the trial court's determination that husband's 2011 tax return was reliable evidence of his income. Wife asserted that husband filed the 2011 return more promptly than he had in the past; she argued that his promptness, combined with the substantial losses claimed, made the return unreliable. But husband's accountant testified that husband's tax returns were complete and reliable. That testimony is "any evidence" sufficient to support the trial court's finding that husband's tax return was credible and reliable evidence of his income. *See Anderson,* 258 Or App at 570 (reciting the "any evidence" standard).

Finally, in wife's sixth assignment of error, she asserts that the trial court should have calculated husband's income by averaging his income from 2009, 2010, and 2011. We disagree. Husband testified that he earned $12,000 in the first four months of 2012, that he continued to work full time, and that he expected to make $70,000 for the year, or $5,833 per month. His accountant described that estimate as "possible and realistic." The court implicitly determined that husband's 2011 individual tax return—which reflected the most recent profits and losses experienced by husband's businesses—and the projection for the income husband expected to receive in 2012 was reliable evidence on which to base husband's income. Wife has not explained why the trial court was required, instead, to rely on an average of the income that husband enjoyed in past years.

To summarize, we have rejected wife's first, fifth, seventh, and eighth assignments of error without discussion. In addition, wife failed to preserve her second and fourth assignments of error. Finally, her third and sixth assignments of error fail on the merits. Thus, we conclude that wife has not indentified any way in which the trial court committed reversible error.

Affirmed.